## Mueller Lumber Company, Appellee, v. Paul M. Bollinger, Appellant.

### Gen. No. 5438.

1. MECHANIC'S LIENS—*when prima facie proof of delivery made.* *Held,* that the evidence recited in the opinion in this case was sufficient to establish *prima facie* that delivery of the lumber in question was made on the dates claimed.

2. MECHANIC'S LIENS—*when notice served by subcontractor in apt time.* Notice of lien is in apt time if served sixty days after the last delivery of the lumber claimed for.

3. MECHANIC'S LIENS—*when payment of preferred claims cannot defeat subcontractor.* Payments made to a contractor and laborers, etc., are not so made as to enable their successful interposition against the claim of a subcontractor if the owner had not required of the contractor the statement required by section 5 of the act.

4. MECHANIC'S LIENS—*against whom decree may run.* A decree *in rem* against an owner is proper without any decree being required against the contractor who was served by publication and did not appear.

Mechanic's lien. Appeal from the Circuit Court of Rock Island county; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed March 16, 1911.

JOHN LOONEY, for appellant.

J. T. & S. R. KENWORTHY, for appellee; ALFRED MUELLER and CLARENCE A. LUDOLPH, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

On March 20, 1908, Paul M. Bollinger, the owner of certain premises in the city of Rock Island, entered into a contract with W. H. Mockabee, a contractor and builder, by which Mockabee agreed to build for Bollinger on said premises a store building according to certain plans and specifications and "to find, provide

and furnish such materials of such kinds and qualities and descriptions as shall be fit, proper and sufficient for completing and finishing said building,'' and to move a cottage on the lot and to improve a barn thereon, for $4,018.50. It was agreed that 85% of the material and labor put into said improvement should be paid for every two weeks and the balance upon completion of the contract. Mockabee began the work. The Mueller Lumber Company is a dealer in lumber and building materials, having a branch establishment in Rock Island. Mockabee, after entering upon this contract, came to said company with one estimate for rough lumber and another for mill work, and the company agreed to furnish the material described in said estimates for certain stated sums. Afterwards certain items were taken off from the list for rough lumber, and the total of the two estimates was reduced to $678.48. Mockabee ordered said material from the company at these figures, and gave an order requesting Bollinger to pay the company that amount, and the order was presented to Bollinger by the company, and he said he would accept it when the material was delivered. The lumber company claims that it delivered all said lumber and various other items of lumber ordered by Mockabee during the progress of the building. About June 4, 1908, Mockabee abandoned the building and left the country. Bollinger then proceeded to complete the building himself under one F. A. Fredericks, whom he employed as his foreman and authorized to purchase the materials needed to complete the building. The company claims that thereafter Bollinger, through Fredericks, ordered and it delivered certain additional materials for the completion of the building. Thereafter the company filed this bill for a mechanic's lien. The bill was answered, the cause was tried and the company had a lien for $1,104.81, for the materials furnished Mockabee and interest thereon, and also for $113.74 for materials

furnished Bollinger and interest thereon, making a total of $1,218.65 for which the lumber company was given a lien on the premises. This is an appeal by Bollinger from that decree. Appellant contends (1) that there is no sufficient proof that appellee delivered this lumber and material; (2) that notice of lien was not served within the time fixed by statute; (3) that appellant exhausted the contract price in paying preferred claims for labor and in completing the building, and therefore is not bound to appellee; and (4) that the decree is erroneous because it does not contain a judgment against Mockabee.

Appellee kept a record of its deliveries of lumber and material in this manner: It prepared in its office duplicate loading slips for a load of lumber, one a carbon copy of the other. Each slip described the various items to be put into a load of lumber. The slips were given to the yard man and he loaded a wagon with the material designated on the slip and handed the duplicate slip to the driver, who was to deliver it. The driver took the load to the building designated on the slip and there unloaded the lumber on the premises where the building was being erected. He then took the slip to the contractor who was erecting the building or to his foreman, and the contractor or foreman receipted for the load on the slip. The slip was then returned by the driver to appellee's office. The yard man had also returned the original slip. The two slips were preserved together and were used in making up the books of account of appellee. The slips for the delivery of all this lumber were produced in evidence. Most of them had thereon the receipt of Mockabee or his foreman. Most of the drivers who delivered the loads were produced as witnesses and testified in general to the delivery of numerous loads at this building. Some of the drivers identified the slips precisely. In certain cases the load was delivered at the end of the day or when there was no one

at the building to receipt for the same, and where the slip was not receipted appellee sent two employes to the premises to check up the lumber so delivered, and these employes testified to their doing this. In one case where there was no one to receipt for the load it was not so checked up, but the driver testified positively to the delivery of the load described in the slip. The loads delivered after Mockabee abandoned the contract were receipted for by Fredericks. In certain cases the driver was dead or could not be found, and for most of these loads the receipt of Mockabee on the slip was identified as genuine. In various ways these loads of lumber were traced to this building, and we do not doubt that when all the proof is considered it was competent and sufficient to make a *prima facie* case that the lumber described on the slips was delivered on the dates stated. In addition to this, appellee caused a contractor and builder to go upon the premises and check up the lumber, and he found in the building the amount of lumber and the character of lumber which appellee claimed to have furnished. There was no proof that any other person, firm or corporation furnished any of this lumber or material. It would unduly extend this opinion to set out in full the evidence as to each separate load of lumber, but it is sufficient to say that there is proof that all the lumber allowed in the decree was delivered by appellee at the building.

The notices for lien were served on July 25, 1908. The last load delivered when Mockabee was in charge was delivered on May 29, 1908, and the last delivery to Fredericks for appellant was delivered on June 19, 1908. The notice was therefore in apt time; and we also hold that it was sufficient to serve the notice sixty days after the last delivery to Fredericks.

Section 21 of the act of 1903 in relation to mechanic's liens contains the following: "In no case, except as hereinafter provided, shall the owner be compelled to

pay a greater sum for or on account of the completion of such house, building or other improvements than the price or sum stipulated in said original contract or agreement, unless payment be made to the contractor or to his order in violation of the rights and interests of the persons intended to be benefited by this act.'' Appellant contends that he paid for labor, which is preferred, and in finishing the work after Mockabee left, more than the contract price and therefore, under the language just quoted, he cannot be compelled to pay appellee. This position ignores other sections of the act. Section 5 enacts that the owner before paying the contractor or his order any money shall require from the contractor a statement in writing under oath of the names of all parties furnishing materials and labor and of the amounts due or to become due to each. Section 32 provides that no payment to the contractor or his order shall be regarded as rightfully made as against the subcontractor, laborer, or other party furnishing labor or materials, if such payment was made by the owner without exercising and enforcing the rights and powers conferred upon him in sections 5 and 32 of the act. Appellant made these payments to Mockabee and to the laborers without requiring or obtaining such a statement from Mockabee. Therefore all moneys so paid by appellant were paid in violation of the rights of appellee, and are not to be considered as rightfully made. It may well be doubted whether in other respects appellant has made such proof as would entitle him to be credited with the moneys so paid or with the moneys which he alleges he paid to complete the building. But, with the payments to Mockabee and to the laborers rejected as not rightfully made because of the statute above referred to, the decree in this case is within the contract price.

Appellant contends that under section 28 of the lien law the judgment must be against both the owner and

the contractor or against neither, and that, because there is no judgment here against Mockabee, the decree cannot stand. Mockabee was a defendant and was served by publication, and did not appear. No personal decree could be entered against him. No personal decree was entered against appellant. The decree was only *in rem* for the sale of the premises unless appellant should pay the amount found due within thirty days. We are of the opinion that the provision relied upon does not apply to this case.

The decree is therefore affirmed.

*Affirmed.*